## RAFAEL LOPEZ V. THE STATE.

*No. 2745.   Decided January 22.*

**1.   Driving Stock from Accustomed Range—Fact Case.**—See the statement of the case for evidence *held* insufficient to support a conviction for wilfully driving stock from its accustomed range, etc.

**2.   Same—Theft—Charge of the Court.**—Under an indictment for horse theft the appellant was convicted for wilfully driving stock from its accustomed range, etc. The proof shows that if guilty at all, the defendant was either the guilty agent who took the horse, or he was guilty as a principal by acting with one Campo—who had been convicted of theft—in the taking. In either event the proof would not raise the issue of wilfully driving stock from the accustomed range, for if guilty as a principal because of his acting with Campo, he could be guilty only of the offense of which the proof showed Campo to be guilty. The trial court erred in submitting to the jury the issue of wilfully driving stock from its accustomed range.

**3.   Practice—Evidence.**—Although under arrest the defendant was not informed that he was suspected or charged with the theft of horses until so informed by the sheriff. On this trial he proposed, but was not permitted, to prove by the sheriff that immediately upon being informed of the cause of his arrest, he told the sheriff, in explanation of his possession of the alleged stolen horse, that he traded another horse for it with Campo, and that Campo was present and assented to his said statement to the sheriff. *Held*, that the exclusion of the proposed evidence was error.

**4.   Theft.—Charge of the Court** reads as follows: "Evidence of the theft and possession of another animal by the defendant at the same time and place as that where it is testified the animal in question was lost or missing has been admitted, and you are instructed that the object of this testimony (and the only purpose for which you can consider it) is to explain the intent with which the animal in question was taken (if taken), and not as proof of the taking of the animal charged." *Held*, obnoxious to the objection that it assumes as a fact that the evidence established the contemporaneous theft of another horse.

APPEAL from the District Court of Uvalde.  Tried below before Hon. T. M. Paschal,

The indictment charged the appellant with the theft of a horse; the property of A. Cagnion. The conviction was for wilfully driving stock from its accustomed range without the consent of the owner, and with the intent to defraud the owner thereof. The penalty assessed by the verdict was a term of two years in the penitentiary.

A. Cagnion testified for the State, in substance, that his certain coffee-colored or sorrel horse disappeared from his accustomed range in Bexar County, Texas, on or about September 15, 1888. He was taken (if taken) without the consent of the witness. He was returned to witness on or about October 25, 1888, by H. W. Baylor, sheriff of Uvalde County. He had been counter-branded since his disappearance. Antonio Sanchez lived with and was working for the witness at the time of the disappearance of the said horse. Sanchez then owned a mare which ran with the witness's said horse and other horses.

Antonio Sanchez testified for the State that he lived with Cagnion at the time Cagnion lost his horse. He, witness, then owned a brown colored mare, which disappeared about the same time. He afterwards recovered the mare from an American boy in Atascosa County. Witness did not consent to the taking of his said mare. The witness knew the defendant as Gregorio Parras. He also knew one Theodora Reyes, who lived about a mile from Cagnion's house. He saw Reyes and defendant together near Cagnion's house about the time Cagnion's horse disappeared. He saw them together several times, and one time saw them in company with one Pedro Campo.

H. W. Baylor, sheriff of Uvalde County, testified for the State that he first met the defendant about October 8, 1888, in the western part of the town of Uvalde. He then called himself Rafael Lopez, and was in company with Pedro Campo and Theodora Reyes. The said parties then had four horses with them. One was a black bald-faced horse, another a dun mare, another a gray pacing horse, and the fourth was a sorrel horse—the animal involved in this prosecution. The defendant was then riding the sorrel horse. Campo, speaking English, offered to sell witness the sorrel horse for $30. Witness offered him $15, and he finally agreed to take $18 for the animal. Defendant, when Campo offered to sell the sorrel horse, addressing Campo in Spanish, said, "If you sell the sorrel horse, I want my horse back." Campo told witness that he traded with a Mexican for the sorrel horse near the Calaveras in Bexar County; that upon trading he, as was his custom, threw the horse down and counter-branded him, and that he had no bill of sale for the animal. D. E. Jordan claimed and recovered the black bald-faced horse. Campo rode the black horse into Uvalde and tried to sell him. Neither the defendant nor Reyes offered any of the horses for sale. Hobbs saw the defendant in Uvalde before the witness did. Campo told witness that he met de-

fendant and Reyes near Hondo City, in Medina County. Defendant could speak but few words in English.

John Hobbs testified for the State that he saw defendant, Campo, and Reyes together in the town of Uvalde, on or about October 8, 1888. Campo was then riding the sorrel horse, the defendant the black horse, and Reyes was riding the gray pacing horse and leading the dun mare. Witness asked Campo if he would sell the sorrel horse. He replied in English that he would take $50 for him. He, Campo, then told witness that he and his companions had been picking cotton, and that he traded for the sorrel horse on the hill near Castroville, in Medina County. Witness did not think the defendant could converse in the English language.

D. E. Jordan testified for the State that he lived in Atascosa County. On or about October 3, 1888, the witness met Pedro Campo and two other Mexicans between Benton City and Lytle, going towards Lytle. To one of the said Mexicans (not Campo) he traded a black bald-faced horse for a bay mare. Antonio Sanchez afterwards proved the mare away from witness, and witness on or about November 3, 1888, recovered his black horse from Sheriff Baylor.

Luce Barcomato testified for the State that he lived about a mile from Cagnion's house in Bexar County. Some time in September, 1888, he could not locate the day, he saw the defendant, Campo, and Reyes together, on foot, in the range of Cagnion's horses. Sanchez had a horse running on that range. The State closed.

Polonio Ballo testified for the defense that he lived in Floresville. Early in September, 1888, the witness, en route from Floresville to the Salado, met a man named Senigas riding a horse which he recognized as a horse that belonged to Pedro Campo. He asked Senigas where Campo was. Senigas replied that he had just left Campo a short distance up the road saddling a horse that he, Senigas, traded him for the horse he, Senigas, was then riding. When witness reached a water hole about two miles beyond where he met Senigas, he found Campo saddling a sorrel horse which he, Campo, said he had just got in a trade with Senigas.

W. G. Meacham testified for the defense that he, Willie Mitchell, and Jesse Parsons arrested the defendant, Campo, and Reyes. They immediately demanded the cause of their arrest, and were told in reply that they were arrested by the order of the sheriff of Uvalde County. They were not told that they were accused of horse theft.

H. W. Baylor, recalled by the defense, testified that defendant, Campo, and Reyes were arrested on his order by Mitchell, Parsons, and Meacham. Some hours afterwards witness went to the jail, and the defendant, when told that witness was the sheriff, asked the cause of his arrest. Witness told him that he, witness, suspected him and his companions of being horse thieves. Defendant then made to witness a statement as to how he came into possession of the Cagnion sorrel horse.

*Baker & Powell* and *De Montel,* for appellant.

*W. L. Davidson,* Assistant Attorney-General, for the State.

White, Presiding Judge.—Three parties were separately indicted for the theft of the horse involved in this prosecution. One of them, to-wit, one Pedro Campo, was convicted of the theft of said animal, and on appeal the judgment of conviction in his case was affirmed by this court at its last Tyler term. Our recollection is that the facts on that appeal were, if not identically, substantially the same as submitted on this appeal. In this case this appellant has been convicted not of the theft *per se* of the animal, as was Campo, but of a different offense—that is, of wilfully driving the animal from its accustomed range without the consent of the owner and with intent to defraud the owner thereof, as provided for in article 749 of the Penal Oode.

In our opinion the facts proved do not warrant a verdict and judgment of conviction for wilfully driving an animal from its accustomed range as provided by article 749 of the code, and that the court erred in submitsing that issue to the jury upon the facts in the case. Defendant, if guilty at all under the facts, was either the guilty agent who took the horse himself, or he was guilty as a principal by acting with the thief Campo in the taking. If defendant was guilty only as a principal from his connection and acting together with Campo, then if Campo's crime was theft of the animal, defendant's must have been the same; he could not, as a principal, be guilty of a different crime from that of the actual taker. Trial courts are not authorized to charge the jury on a phase of case not presented in the evidence. Spoonemore v. The State, 25 Texas Ct. App., 358.

We are of opinion that the court erred in refusing to permit the defendant to prove by Baylor, the sheriff, what his statements to the sheriff were relative to and explanatory of his, defendant's, possession of the animal. Defendant had not been informed that he was suspected or charged with the theft of the horses until so informed by Baylor, and the statements proposed to be proved were immediately made by defendant to the effect that he had traded another horse to Campo for the alleged stolen horse. He also proposed to prove by the same witness, in connection with these statements, that Campo was present and heard and assented to said statements. Taylor v. The State, 15 Texas Ct. App., 356; Roberts v. The State, 17 Texas Ct. App., 82; Heskew v. The State, Id., 162; York v. The State, Id., 441; Moreno v. The State, 24 Texas Ct. App., 401; Field v. The State, Id., 422; Willson's Crim. Stats., sec. 1300.

We are also of opinion that the ninth paragraph of the charge is obnoxious to the objection that it assumes as a fact that the evidence estab-

lished the theft and possession by defendant of another animal at the same time and place that the animal in question was stolen.

The judgment is reversed and cause remanded.

*Reversed and remanded.*

Hurt, J., absent.